State Court of Fulton County
**E-FILED**
18EV005371
11/6/2018 3:29 PM
LeNora Ponzo, Clerk
Civil Division

GEORGIA, FULTON COUNTY

DO NOT WRITE IN THIS SPACE

**STATE COURT OF FULTON COUNTY**
Civil Division

CIVIL ACTION FILE #: _____

Habitat for Humanity International, Inc.
_____
270 Peachtree Street N.W., Suite 1300
_____
Atlanta, GA 30303
_____
Plaintiff's Name, Address, City, State, Zip Code

vs.

Robert Derrick Morris
_____
3080 Saint Rose Pkwy, Unit 1197
_____
Henderson, NV 89052
_____
Defendant's Name, Address, City, State, Zip Code

| TYPE OF SUIT | AMOUNT OF SUIT |
|---|---|
| [ ] ACCOUNT | PRINCIPAL $ 77,519.00 |
| [ ] CONTRACT | |
| [ ] NOTE | INTEREST $ tbd |
| [ ] TORT | |
| [ ] PERSONAL INJURY | ATTY. FEES $ tbd |
| [ ] FOREIGN JUDGMENT | |
| [ ] TROVER | COURT COST $ tbd |
| [ ] SPECIAL LIEN | |
| | *********** |
| [ ] NEW FILING | |
| [ ] RE-FILING:  PREVIOUS CASE NO. _____ | |

**SUMMONS**

TO THE ABOVE NAMED-DEFENDANT:

You are hereby required to file with the Clerk of said court and to serve a copy on the Plaintiff's Attorney, or on Plaintiff if no Attorney, to-wit:

Name: Brooks A. Suttle
_____

Address: Alston & Bird, LLP, 1201 W. Peachtree St. NW
_____

City, State, Zip Code: Atlanta, GA 30309          Phone No.: 404-881-7551

An answer to this complaint, which is herewith served on you, should be filed within thirty (30) days after service, not counting the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint, plus cost of this action. **DEFENSE MAY BE MADE & JURY TRIAL DEMANDED**, via electronic filing through E-file GA or, if desired, at the e-filing public access terminal in the Self-Help Center at 185 Central Ave., S.W., Ground Floor, Room TG300,  Atlanta, GA 30303.

11/6/2018 3:29 PM                    LeNora Ponzo, Chief Clerk (electronic signature)

If the sum claimed in the suit, or value of the property sued for, is $300.00 or more Principal, the defendant must admit or deny the paragraphs of plaintiff's petition by making written Answer. Such paragraphs undenied will be taken as true. If the plaintiff's petition is sworn to, or if suit is based on an unconditional contract in writing, then the defendant's answer must be sworn to.

If the principal sum claimed in the suit, or value of the property sued for, is less than $300.00, and is on a note, unconditional contract, account sworn to, or the petition sworn to, defense must be made by filing a sworn answer setting up the facts relied on as a defense.

*SERVICE INFORMATION:*
Served, this _____ day of _____, 20_____.   _____
                                                              DEPUTY MARSHAL, STATE COURT OF FULTON COUNTY

WRITE VERDICT HERE:
We, the jury, find for _____

_____

This _____ day of _____, 20_____.   _____ Foreperson

**(STAPLE TO FRONT OF COMPLAINT)**

State Court of Fulton County
**\*\*E-FILED\*\***
18EV005371
11/6/2018 3:29 PM
LeNora Ponzo, Clerk
Civil Division

## General Civil and Domestic Relations Case Filing Information Form

☐ Superior or ☑ State Court of  FULTON  County

| For Clerk Use Only | |
|---|---|
| Date Filed _____ | Case Number _____ |
| MM-DD-YYYY | |

**Plaintiff(s)**
Habitat for Humanity International, Inc.

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Defendant(s)**
Morris, Robert Derrick

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney** Brooks A. Suttle        **Bar Number** GA 299667        **Self-Represented** ☐

### Check One Case Type in One Box

**General Civil Cases**
- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contract
- ☐ Garnishment
- ☑ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**
- ☐ Adoption
- ☐ Dissolution/Divorce/Separate Maintenance
- ☐ Family Violence Petition
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

**Post-Judgment – Check One Case Type**
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Modification
- ☐ Other/Administrative

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____    _____
Case Number         Case Number

☑ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is an interpreter needed in this case? If so, provide the language(s) required. _____
Language(s) Required

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

_____
_____

Version 1.1.18

State Court of Fulton County
**E-FILED**
18EV005371
11/6/2018 3:29 PM
LeNora Ponzo, Clerk
Civil Division

IN THE STATE COURT OF FULTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| HABITAT FOR HUMANITY INTERNATIONAL, INC., | ) ) ) | C.A. No. _____ |
| Plaintiff, | ) ) | **COMPLAINT** |
| v. | ) ) | |
| ROBERT DERRICK MORRIS, | ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) ) | |

## COMPLAINT

Plaintiff Habitat for Humanity International, Inc. ("HFHI") hereby brings this action against Defendant Robert Derrick Morris ("Morris"), and alleges the following:

### THE PARTIES

1.

HFHI is a corporation organized under the laws of the State of Georgia, with its principal place of business located at 270 Peachtree Street N.W., Suite 1300, Atlanta, Georgia 30303.

2.

Morris is a former employee of HFHI. From approximately April 2013 until approximately June 2015, Morris lived in Atlanta, Georgia and was based out of HFHI's offices there. Upon information and belief, Morris currently owns real property in Georgia, located at 1995 Dennard Hardy Road, Gordon, Georgia 31031-2615. Upon information and belief, Morris is currently a resident of the State of Nevada.

JURISDICTION AND VENUE

3.

This Court has subject matter jurisdiction over this controversy pursuant to O.C.G.A. § 15-7-4.

4.

This Court has personal jurisdiction over Morris under O.C.G.A. § 9-10-91 based on the facts and allegations set forth herein.

5.

Venue is proper in this Court under O.C.G.A. § 9-10-93 based on the facts and allegations set forth herein.

FACTUAL ALLEGATIONS

Background on HFHI

6.

HFHI is a Christian-based nonprofit, charitable organization dedicated to building and making improvements to houses for low income families around the world.

7.

HFHI relies largely on charitable contributions for the funding needed to provide suitable and habitable housing for such families, as well as to complete the day-to-day operational activities of the organization.

8.

To establish a more efficient, cost-effective method for HFHI employees to purchase goods and services for HFHI-related purposes, HFHI offers a Purchasing Card Program through

which its employees may apply for a credit card to use for purchases other than travel-related expenses.  As part of the application to receive an HFHI-issued credit card, an employee must sign a cardholder agreement and agree that he or she will comply with the policies and procedures set forth in HFHI's Bank of America Purchasing Card Program guidelines.  (*See* Exhibit A.)

9.

In particular, the guidelines make clear to the employee that, "[a]lthough the Purchasing Card is issued in your name, it is the property of *HFHI* and is only to be used for eligible business related purchases," and that the employee should "[n]ever use the card for personal purchases as this will be strictly enforced."  (Id. at p. 2.)  The guidelines contain detailed instructions and procedures for, as well as restrictions upon, an HFHI employee's use of an HFHI-issued credit card.  (Id. at pp. 3-9.)

10.

Although the permissibility of specific expenses may vary depending on context, the overarching rule is that employees of HFHI with corporate credit cards are authorized to use the credit cards only for *bona fide* business expenses in connection with their employment at HFHI. In this regard, the guidelines specifically state that "[i]mproper use of the card may result in disciplinary action up to and including termination."  (Id. at p. 4.)

11.

HFHI also has a Travel and Business Expense Policy that applies to all HFHI employees. (*See* Exhibit B.)  As noted in the policy agreement, "HFHI funds are made available through the generous donations of individuals and corporations and the grants of governmental agencies.

- 3 -

This policy requires all staff members to ensure good stewardship over every dollar spent in conducting HFHI business." (Id. at p. 1.) As with the Purchasing Card Program, the Travel and Business Expense Policy contains extensive and detailed provisions regarding the types of expenses that are or are not permitted, how such expenses should be documented and reported to HFHI, and how any authorized reimbursement from HFHI should be sought by the employee. (Id. at pp. 2-10.)

12.

Some HFHI employees also are granted use of HFHI-owned vehicles. Among other policies and requirements, HFHI's vehicle use policy makes clear that HFHI vehicles may not be used for private use at any time.

13.

HFHI also provides its employees with a certain number of paid vacation days, which accrue at a monthly rate based upon years of service. Under HFHI's personnel policies, if an employee wishes to take any form of leave, such as vacation leave, sick leave, military leave, etc., the employee must complete a leave request form documenting his or her supervisor's approval of that leave. The approved leave request form must be sent to HFHI before or within the pay cycle when leave is taken.

Morris' Employment with HFHI

14.

Morris is a former employee of HFHI. As an employee of HFHI, Morris agreed to all of the policies referenced in paragraphs 8–13 above. Morris was originally an employee of HFHI from 2002 to 2005. He was subsequently rehired by HFHI in or around February 2010.

- 4 -

15.

From approximately February 2010 until March 2013, Morris was employed in HFHI's Development department, and worked remotely from South Carolina. On or around April 20, 2013, Morris assumed a new role as Director of Construction Technology and Safety ("Director of CT&S") for HFHI. In connection with his new role, Morris moved to Atlanta, Georgia, and his primary workplace was transitioned to HFHI's home offices there. Morris lived in Georgia and worked out of HFHI's Atlanta offices for over two years. On or around June 1, 2015, Morris transitioned into working for HFHI remotely from an Estero, Florida office location. Morris continued to work as Director of CT&S until his employment with HFHI was terminated in August 2017.

16.

As Director of CT&S, Morris traveled frequently to conduct trainings and visit various affiliates of HFHI nationwide, including affiliates in Georgia. Further, Morris was expected to, and did, travel regularly to HFHI's offices in Georgia for meetings and other work-related purposes.

17.

While he was Director of CT&S, Morris regularly used an HFHI-owned vehicle. For example, from approximately November 2016 through August 2017, Morris was granted primary custody of a HFHI-owned Nissan pickup truck. Although he was given primary custody of the vehicle due to his remote location away from HFHI's home offices, Morris was expected, and indeed required, to use the vehicle only for HFHI-related purposes. On multiple occasions,

Morris used this HFHI-owned vehicle to travel to HFHI's headquarters in Georgia, and expensed HFHI for the cost of that travel.

18.

While Morris was Director of CT&S, he regularly used his HFHI-issued credit card to pay for various expenses under HFHI's Purchasing Card Program. Morris' charges on his HFHI-issued credit card were billed to, and paid from, HFHI's offices in Georgia.

19.

While he was Director of CT&S, Morris also regularly submitted expense reports, pursuant to HFHI's Travel and Business Expense Policy, for reimbursement of various expenses that he incurred directly. Morris was reimbursed for such expenses from HFHI's offices in Georgia, based on the expense reports he submitted to HFHI's offices in Georgia.

Morris' Separation from HFHI

20.

Morris began reporting to a new supervisor on or around July 1, 2017. On or around August 1, 2017, the new supervisor questioned Morris via email about the business nature of certain expenses he had incurred on behalf of HFHI. During follow-up conversations, Morris asked the supervisor to "put me out of my misery," and requested to be laid off from HFHI—a request that Morris' supervisor communicated to HFHI management.

21.

Morris' stated reason for asking to be laid off was due to a purported "lack of faith in my future opportunities for success at HFHI." Unaware of the problematic nature of the transactions that Morris' supervisor had previously questioned, HFHI management agreed with his request.

- 6 -

On or around August 8, 2017, Morris was granted a severance package by HFHI management totaling $14,960, and his employment with HFHI ended effective August 18, 2017.

22.

Morris' final employment payments were released in four tranches between August and October 2017.  The payments included compensation for his final time worked, pay for the "accrued but not used" balance of vacation leave that HFHI had recorded for Morris as of his final day of employment, and the agreed-upon severance package.

HFHI's Discovery of the Extent of Morris' Wrongful Conduct

23.

Based on the suspicious transactions noted above, subsequent to Morris' separation from HFHI, his supervisor began to look more closely at his history of HFHI credit card purchases and expense reimbursements.  As a result of that inquiry, a number of specific concerns were identified to HFHI management, including in relevant part:

(1) Accounts Payable had identified repeated delays in information submission and gaps in the supporting documents provided by Morris relating to expenses incurred on his HFHI credit card.  HFHI had in fact cancelled Morris' corporate credit card effective July 2017;

(2) Some of Morris' expenses did not appear to have legitimate business purposes.  For example, there appeared to be a high frequency of reimbursements for mileage expenses and credit card charges for gas expenses that had no discernable connection to HFHI-related business; and

(3) There appeared to be improper budget allocation of certain expenses incurred by

Morris.  For example, certain conferences or CT team events appeared to have been

charged to the HomeBuilder's Blitz ("HBB") budget, which conferences and/or events

did not appear to relate to the HBB project.

24.

After the discovery of these and other irregularities, HFHI's Internal Audit Department

("IAD") commenced a full investigation into Morris' credit card expenses and employee expense

reports, completing its work in or around January 2017.

25.

Through its investigation, the IAD confirmed the inappropriate and fraudulent use of

HFHI resources by Morris.  More particularly, Morris incurred at least 436 unauthorized

expenses that were inappropriate or personal in nature.  Such expenses included approximately

$21,469 in unauthorized HFHI credit card transactions and approximately $4,481 in fraudulent

expense reimbursements, for a total of at least $25,950 in unauthorized and/or fraudulent

personal expenses that Morris charged to HFHI (or approximately 39% of his total expense

transactions).

26.

In addition to Morris' confirmed inappropriate and fraudulent use of HFHI resources

described above, the IAD identified an additional approximately $18,522 in expenses that Morris

charged to HFHI, which did not include adequate documentary support and/or were otherwise

not in compliance with HFHI policy.  Upon information and belief, these expenses

reimbursements were inappropriate and fraudulently obtained by Morris.

- 8 -

27.

In addition, the IAD recalculated the mileage traveled by Morris based on the locations of gas, meal and lodging expenses incurred during personal trips on which he drove his HFHI-owned vehicle.  Through its analysis, the IAD determined that Morris drove at least 9,000 miles using his HFHI vehicle for trips that were personal in nature.  Based on the U.S. Internal Revenue Service business rate for mileage depreciation, Morris' personal use of the HFHI vehicle represents at least an additional $2,285 loss to HFHI.

28.

In addition, the IAD investigation further determined that, between approximately July 1, 2014 and August 18, 2017, there were multiple instances in which Morris knowingly failed to accurately report to HFHI when he had taken paid leave.  Morris' misreported leave resulted in at least $15,802 in losses to HFHI.

29.

Lastly, pursuant to HFHI policy, only employees in good standing are eligible to be considered for receipt of a severance package.  As such, Mr. Morris' preemptive actions to voluntarily initiate his own departure from HFHI—after his supervisor questioned his suspicious expenses, and prior to HFHI management's full discovery of his inappropriate use and/or embezzlement of HFHI funds—constituted a fraudulent misrepresentation of the reasons for his departure in order to secure a severance payment Morris knew he was not entitled to.  In this regard, Morris' knowing and fraudulent misrepresentations caused an additional $14,960 loss to HFHI in the form of Morris' severance payments.

30.

As a result of Morris' improper, unlawful, unauthorized and fraudulent conduct described above, HFHI has suffered losses totaling approximately $77,519.00.

31.

After the IAD completed its report, HFHI had difficulty locating or otherwise contacting Morris to discuss his improper and unlawful conduct.  Once HFHI had reviewed the IAD's findings, HFHI sought to contact Morris to provide HFHI's evidence of his wrongdoing, and to attempt to work out a resolution whereby he could pay HFHI back for his improper personal expenses and personal use of HFHI property.  At that time, HFHI believed that Morris was residing in California.  HFHI's in-house counsel had some limited electronic correspondence with Morris, until he was asked for an updated mailing address.  At that point, Morris ceased responding to HFHI's attempts to communicate with him.

32.

HFHI's Human Relations department eventually managed to reach Morris on his cell phone.  Morris told the HFHI representative that he was in fact still living in Florida, at the same address where he was living when he was terminated from HFHI in August 2017.  Morris indicated that any documents that HFHI wanted to send him should be delivered to that Florida address.

33.

On June 7, 2018, HFHI sent multiple copies of a demand letter to Morris by Federal Express, Certified Mail and First Class Mail.  The letter detailed the results of HFHI's internal review of Morris' activities, including his numerous improper expense reimbursements, misuse

of an HFHI-owned vehicle and multiple unauthorized paid absences.   The letter demanded repayment from Morris in the amount of $58,997.00.

34.

Although the IAD report identified approximately $77,519.00 in losses that HFHI suffered as a result of Morris' improper and unlawful conduct, the approximately $59,000 demanded in the letter represented the amount that HFHI considered indisputable, and which HFHI could affirmatively prove based on the evidence in HFHI's possession at that time.   HFHI enclosed a substantial amount of such evidence in the demand letter sent to Morris.   HFHI has good cause to believe that the additional approximately $18,500.00 in losses identified in the IAD report—which relate to expenses that were not properly documented or supported by Morris and/or that otherwise appear to violate HFHI policy—can also be attributed to Morris' knowing and deliberate misconduct.

35.

According to the U.S. Postal Service ("USPS"), USPS made at least two attempts to deliver the demand letter to Morris via Certified Mail at the Florida address he had provided to HFHI.   Tracking records indicate that USPS was unable to deliver the letter to an authorized recipient (*i.e.*, Morris), and it was returned to HFHI.   The copy of the demand letter sent via Federal Express, however, was delivered to the doorstep of the Florida residence at the address Morris provided to HFHI.   Presumably, the copy sent via U.S. First Class mail was also delivered to the address.   HFHI has received no response to the demand letter to date, nor any other attempt by Morris to contact HFHI to discuss a resolution of HFHI's claims therein.

- 11 -

36.

Upon information and belief, Morris received and/or otherwise became aware of the demand letter and the demand set forth therein.

37.

Upon information and belief, Morris has deliberately avoided, and is deliberately avoiding, contact with HFHI in order to avoid responsibility for his unlawful and improper conduct while employed by HFHI.

## COUNT I – BREACH OF FIDUCIARY DUTY

38.

HFHI restates and incorporates by reference Paragraphs 1 through 37 as if fully set forth herein.

39.

As the Director of CT&S for HFHI, Morris occupied a position of trust within HFHI and, accordingly, owed a fiduciary duty of utmost diligence and loyalty and absolute good faith to HFHI.

40.

Through his actions and conduct described above, Morris abused his position of trust and breached his fiduciary duty to HFHI.

41.

As a direct and proximate result of Morris' breach, HFHI has been damaged in an amount including at least the approximately $77,519.00 in damages described above.

42.

HFHI has suffered further damages as a result of Morris' breach, including without limitation the costs in time, resources, travel and other expenses incurred in investigating his misconduct and preparing the IAD report.

43.

Morris' breach of fiduciary duty constitutes willful, wanton and/or malicious conduct in reckless disregard of the rights of HFHI.

44.

Accordingly, in addition to actual damages caused by Morris' breach of fiduciary duty, HFHI is entitled to an award of punitive damages against Morris in such an amount determined by the enlightened conscience of a jury.

## COUNT II – FRAUD AND CONCEALMENT

45.

HFHI restates and incorporates by reference paragraphs 1 through 44 above as if fully set forth herein.

46.

Morris knowingly concealed his inappropriate and unauthorized use of HFHI funds and/or assets, with the specific intent to deceive and defraud HFHI, and made false misrepresentations of fact to HFHI regarding same.

47.

Morris' also made false representations of fact to HFHI regarding the reasons for his desire to separate from employment with HFHI.

48.

Morris intended for HFHI to rely on the above-referenced false representations to HFHI, in order to delay and further conceal his unauthorized use of HFHI funds and/or assets, and also in order to secure a severance payment from HFHI on false pretenses.

49.

HFHI relied on Morris' false representations in regard to the above.

50.

As a direct and proximate result of Morris' fraud and concealment, HFHI has been damaged in an amount to be proven at trial, but including at least the approximately $77,519.00 in damages described above.

51.

HFHI has suffered further damages as a result of Morris' breach, including without limitation the costs in time, resources, travel and other expenses incurred in investigating his misconduct and preparing the IAD report.

52.

Morris' fraud constitutes willful, wanton, and malicious conduct in reckless disregard of the rights of HFHI.

53.

Accordingly, in addition to actual damages caused by Morris' breach of fiduciary duty, HFHI is entitled to an award of punitive damages against Morris in such an amount determined by the enlightened conscience of a jury.

## COUNT III – UNJUST ENRICHMENT

54.

HFHI restates and incorporates by reference paragraphs 1 through 53 above as if fully set forth herein.

55.

HFHI conferred numerous benefits upon Morris. Such benefits include, without limitation: (1) HFHI entrusting Morris with an HFHI-owned vehicle for work-related use, and paying Morris' expenses relating to use of that vehicle; (2) HFHI entrusting Morris with use of an HFHI credit card for business-related expenses, and paying the credit card bills for the expenses incurred by Morris on his HFHI credit card; (3) HFHI reimbursing Morris for additional expenses that he incurred and claimed were authorized and work-related; (4) HFHI providing Morris paid vacation leave under HFHI's paid leave policy; and (5) HFHI paying Morris a severance payment upon the termination of his employment with HFHI.

56.

Morris was unjustly enriched by his improper conduct described herein. Such unjust enrichment includes, without limitation: (1) Morris' personal use of HFHI's vehicle for non-work-related purposes, and subsequent concealment of such use from HFHI; (2) HFHI's unwitting payment of personal expenses that Morris charged to his HFHI-issued credit card, while knowing that such personal and/or non-work-related charges were improper and unauthorized; (3) HFHI's reimbursement of Morris' unauthorized personal expenses, which reimbursement he sought through deliberate and fraudulent deception, and in full awareness of the fact that the subject expenses were improper; (4) Morris' deliberate failure to accurately

report days he was on vacation leave, such that he received regular payment for those days as if he had been working, and they were not deducted from his paid leave allowance under HFHI's vacation policy; (5) Morris' negotiation and acceptance of the severance payment from HFHI under false pretenses.

57.

For the reasons set forth herein, equity requires Morris to compensate HFHI for the above-described benefits that he unjustly received, in an amount not less than $77,519.00.

<strong><u>COUNT IV – MONEY HAD AND RECEIVED</u></strong>

58.

HFHI restates and incorporates by reference paragraphs 1 through 57 above as if fully set forth herein.

59.

Morris has received money from HFHI that in equity and good conscience Morris should not be permitted to keep.

60.

HFHI has made a demand for repayment of those funds.

61.

Morris has refused HFHI's demand, upon information and belief, by ignoring HFHI's demand letter and deliberately avoiding any and all communication with HFHI.

62.

Accordingly, HFHI is entitled to judgment against Morris in an amount not less than $77,519.00.

- 16 -

## COUNT V – EXPENSES OF LITIGATION UNDER O.C.G.A. § 13-6-11

63.

HFHI restates and incorporates by reference Paragraphs 1 through 62 as if fully set forth herein.

64.

HFHI made good-faith attempts to contact Morris and resolve the issues described herein prior to the filing of this Complaint.

65.

Morris cut off communications with HFHI when he was asked by HFHI's in-house counsel to provide a mailing address where HFHI could send him written correspondence. When an HR representative from HFHI subsequently managed to reach Morris by phone, Morris told the HFHI representative that he was still living in Florida, and indicated that any documents that HFHI wanted to send him should be delivered to his address in Florida on file with HFHI.

66.

HFHI sent multiple copies of the demand letter to Morris' Florida address by Federal Express, Certified Mail and First Class Mail.  Upon information and belief, Morris received and/or otherwise gained knowledge of the demand letter and the content thereof, and has since avoided any communication with HFHI and refused to respond to HFHI's demand.  Upon information and belief, Morris is deliberately avoiding contact with HFHI in order to avoid responsibility for his unlawful and improper conduct while employed by HFHI.

67.

By his actions and conduct described above, Morris has acted in bad faith.

68.

Morris' bad faith has forced HFHI to resort to litigation.

69.

HFHI has incurred unnecessary trouble and expense due to Morris's wrongful, fraudulent and bad faith actions, as described herein.

70.

Accordingly, HFHI is entitled to recover from Morris the expenses of litigation relating to the claims asserted herein, including, but not limited to, reasonable attorneys' fees and costs pursuant to O.C.G.A. § 13-6-11.

## DEMAND FOR JURY TRIAL

71.

HFHI demands a trial by jury for all issues so triable.

## **PRAYER FOR RELIEF**

Wherefore, HFHI respectfully requests the following relief:

(1)     Actual damages of $77,519.00, plus interest;

(2)     Costs incurred by HFHI in investigating Morris' misconduct and preparing the IAD report, in an amount to be determined at trial;

(3)     Punitive damages in an amount to be determined by the enlightened conscience of a jury;

(4)     Reasonable attorneys' fees and costs incurred in this litigation; and

(5)     Such other relief this court deems just and proper.


Respectfully submitted this 6th day of November, 2018.

ALSTON & BIRD LLP

*/s/ Brooks A. Suttle*
Brooks A. Suttle
Georgia Bar No. 299667
brooks.suttle@alston.com
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
(404) 881-7000 (telephone)
(404) 881-7777 (facsimile)

*Counsel for Plaintiff*

State Court of Fulton County
**E-FILED**
18EV005371
11/6/2018 3:29 PM
LeNora Ponzo, Clerk
Civil Division

# EXHIBIT A

Alston & Bird LLP

9.30.2010

HABITAT FOR HUMANITY INTERNATIONAL

# Bank of America
# Purchasing Card Program

## General Information

The HFHI Purchasing Card Program uses a business-to-business credit card for business purchases other than travel-related expenses. This card can be used wherever Visa is accepted.

The purpose of this Program is to establish a more efficient, cost-effective method of purchasing and paying for goods and services. This program is designed to replace a variety of processes including petty cash, check requests, local check writing, use of personal funds, and purchase orders.

**Application for this card has no impact on your personal credit.** No credit check is performed and all personal information is strictly for security purposes.

Please contact the Manager, Purchasing & Travel for a cardholder agreement form.

You and your manager will need to request a cardholder agreement confirming you will comply with the card program policies. Forward the signed cardholder agreement to Manager, Purchasing & Corporate Travel. Your approved application will be processed and sent to the Manager, Purchasing & Corporate Travel within a week and then forwarded to the requester.

When you receive your Purchasing Card, an email will be sent to you with the activation code. You will need to activate your account by calling 1-888-571-1000 provided by the bank. Make sure you sign the back of the Card and *always keep it in a secure place!* Although the Purchasing Card is issued in your name, it is the property of *HFHI* and is only to be used for eligible business related purchases as defined in this document and the Purchasing Card policy. **Never use the card for personal purchases as this will be strictly enforced.**

2

### a.  Using the Purchasing Card

The HFHI Purchasing Card may be used for both in-store purchases as well as mail, phone, online, or fax orders. If you purchase via phone, mail, fax or internet, *ask the vendor to include the receipt with the goods when the product is shipped to you.*

**Example of Acceptable Purchases**

The following are examples of acceptable transaction types and may not apply to every Cardholder, depending on the criteria established by his or her location or specific department.

- Off-site meetings at hotels
- Convention and conference registrations
- Subscriptions, dues, seminars, books, video tapes
- Special occasions (e.g. catering and flowers - see below for exclusions)
- General supplies and miscellaneous maintenance requirements
- Office supplies (subject to location-specific guidelines)
- Computer related supplies
- Electronic database services
- Printing/graphics


**Example of *Un*acceptable Purchases**
The following examples of unacceptable types of transactions apply to all cardholders.
**Exceptions to this must be approved by the Manager, Purchasing & Travel**

- Any transaction exceeding your approved transaction amount
- Any merchant, product, or service normally considered to be inappropriate use of company funds
- Personal items
- Business entertainment unless pre-approved
- Consultants/professional fees
- Cash advances
- Travel expenses
- Airfare
- Hotel
- Car Rental


**Other types of transactions may be deemed as unacceptable under the criteria established by any specific department or location.**

### b.  Using the Purchasing Card

1. Identify need
2. Determine whether purchase meets eligibility requirements
3. Select vendor or Contact Manager, Purchasing & Corporate Travel for a list of preferred suppliers
4. Is vendor Visa-capable? If yes,
   - Go to store and make purchase
   - Place order via phone or online
   - Place order via fax
5. Obtain a receipt
6. Write purpose/event on receipt

**Cardholders must retain all receipts and record the purpose event/for each.**


### c.  Program Restrictions

For security and control, each Purchasing card is assigned the following limits:

- Individual transaction cycle limit (dollars per billing period)
- Single transaction purchase limit

These limits are set by your manager and if you find that the limit is too low to accommodate your monthly requirements, please contact your manager to re-evaluate your limit. If your manager agrees that it would be appropriate to raise the limit on your Card, the manager should address the need with the Manager, Purchasing & Corporate Travel

In addition, no transaction may exceed your approved card transaction limit. If you have an unusual, one-time transaction, which will exceed the limit, notify your manager, who will address the need with the Manager, Purchasing & Corporate Travel

**You are the only person entitled to use your card.**

**Finally, remember you are committing company funds each time you use the Purchasing Card. Improper use of the card may result in disciplinary action up to and including termination.**

### d. Reconciliation and Responsibilities – Cardholders and Managers

**Responsibilities**

The *HFHI* Purchasing Card Program carries corporate, not individual, liability. Invoices will be paid by the Accounts Payable Department.

Each employee is responsible for forwarding their statement together with the approved individual itemized receipt to their Manager for approval.  Once this is done your approved statement and receipts go to the accounts payable department by the 10th business day of the month following the month the charges were incurred.

**Statements not received by the 10th business day of each month by the Accounts Payable department will be considered out of compliance with this policy and the card suspended until the documentation is received.**

Statements are mailed to the employee at the first of each month for the prior month's activity.  However, due to mail time it is suggested that the employee obtain a statement via the website below.

To obtain a statement on line please visit: payment2.works.com

You are required to *retain all receipts (both charge slips and itemized receipts)* for goods and services purchased. If you purchase via phone or mail*, ask the vendor to include the receipt with the goods when the product is shipped to you.* This receipt is the only original documentation specifying whether tax has been paid against the purchase. The following information should be included on the receipt: Vendor name, item description, quantity purchased, sales tax paid, and total price. In addition, write the purpose/event associated with the purchase on the receipt

**Code each transaction with GL account, department, project code and event code no later than the 10th business day of each month by clicking on the following link** payment2.works.com.

Review the billed transactions to ensure that they are valid, and apply proper general ledger account and cost center coding to each transaction. If all of the transactions are valid, *sign and forward the statement and all receipts to your manager for approval.*

**To make this process more convenient for HFHI cardholders you may scan your statement with receipts and forward to your supervisor via email for approval and they can send it to Accounts Payable**

If a charge is not acceptable or in violation of the policy for eligible purchases, the Cardholder Manager should circle the purchase, make a note explaining why the purchase is unacceptable, and forward the statement to the Manager, Purchasing & Corporate Travel. The Cardholder Manager must also determine whether the policy violation can be resolved with the Cardholder. If the issue cannot be settled between the

Cardholder and the Cardholder Manager, the Manager must revoke the card and contact the Manager, Purchasing & Corporate Travel who will suspend the Cardholder's privileges pending outcome of an investigation.

**Monthly Reconciliation for Cardholder**

1. Receive copy of monthly statement.
2. Review statement
   - Correct amount billed
   - No unauthorized charges
   - **Code each transaction with GL account, department, project code and event code no later than the 10th business day of each month by clicking on the following link** payment2.works.com.

3. Is statement okay?
   If *yes*...
   - Forward signed statement and receipts to manager

   If *no*...
   - Highlight unacceptable charges on statement and note why
   - Follow dispute process
   - Forward signed statement and receipts to manager

*Statement should be forwarded to Accounts Payable by the 10th business day.*

## e. Dispute Resolution

There may be occasions when you find items on your statement that do not correlate with your retained receipts. You may not have made the transaction, the amount of the transaction may be incorrect, or you may have a quality or service issue with the item(s) purchased.

Your first recourse is to contact the merchant involved to try to resolve the error. If the merchant agrees that an error has been made, the merchant will credit your account. Highlight the transaction in question on the monthly statement as a reminder that the item is still pending resolution.

If the merchant does not agree that an error has been made, you are required to submit the information in writing on the Statement of Questioned Items Form so that Vendor Name can research the disputed item. You may fax the completed form to Vendor at 800-253-5846. A copy of the form should also be sent to the Manager, Purchasing & Corporate Travel. Be sure to attach a copy to your statement. The amount of the next invoice will be reduced by the amount of the disputed item until the dispute is resolved.

*Any charge you wish to dispute must be identified in writing within 60 days of the statement date. Disputes will then be resolved by Bank of America within 90 days.*

You are responsible for the transactions identified on your statement. If an audit is conducted on your account by Internal Audit, you must be able to produce receipts and/or proof that the transaction occurred. If an error is discovered, you are responsible to show that the error or dispute resolution process has been invoked.

6

**Determine Type of Dispute**

| If Dispute Type Is: | Then: |
| --- | --- |
| Vendor Dispute | 1. Cardholder contacts vendor<br>2. Dispute resolved.<br>If no,<br>• Highlight item on the statement<br>• Fax or mail the *Statement of Questionable Item Form* to Bank of America.<br>• Attach a copy of *Form of Statement*<br><br>If yes,<br>• Highlight item on the statement and note that a credit is going to be issued |
| Charges Violate Policy | Can dispute be resolved between cardholder and manager?<br>• If *no*, revoke card and contact Manager, Purchasing & Corporate Travel. The Manager, Purchasing and Corporate Travel has right to revoke the card at anytime for improper use.<br>• If *yes*, determine resolution and note on statement |

## f.  Closing Accounts

### 1.  Lost or Stolen Cards

The HFHI Purchasing Card is company property and should be secured just as you would secure your personal credit cards. If your Card is lost or has been stolen, notify Bank of America. Lost and Stolen Cards Hotline at 1-888-449-2273 (24 hours a day) and the Manager, Purchasing & Corporate Travel *immediately*. Written confirmation of cancellation must then be accomplished by mail or fax.

Upon receipt of your call, further use of the Card will be blocked. Prompt action in these circumstances will reduce HFHI liability for unauthorized charges.

### 2.  Change in Cardholder Job Assignment

Upon job reassignment of a Cardholder, it is the Cardholder Manager's responsibility to obtain the Purchasing Card(s) and all receipts for purchases that have not been billed. The Cardholder Manager will cut the card in half and notify the Manager, Purchasing & Corporate Travel.

The final bill will be reviewed by the Cardholder Manager. The manager is required to attach receipts to the statement. The final approved statement should be forwarded to the Accounts Payable for processing.

3. **Change in Cardholder Job Status**

Upon termination (either voluntary or involuntary), the Cardholder Manager should obtain the Purchasing Card(s) and all receipts for purchases that have not been billed. The Cardholder Manager will cut the card in half and send it to the Manager, Purchasing & Corporate Travel.

**It is critical to cancel a card immediately upon an employee leaving the company or preferably, when the employee informs the company that he/she will be terminating employment.**

### g. Taxes

Sales and Use Tax rules vary between states and local jurisdictions, but the following are general guidelines to use in order to determine whether tax should be paid on a purchase.

**Taxable Items**

The general rule is that sales tax will apply to the purchase of tangible personal business property. Tangible personal business property is defined as something that can be weighed, felt, seen and touched (i.e. a pencil but not duplicating services). The taxability of freight, delivery, handling, and installation charges varies by state; therefore, the purchaser should always request that these charges be separately stated on the invoice. Off-the-shelf software packages are taxable. *If sales tax was not paid for a transaction, you must write on the receipt or invoice the sales tax percentage for your local jurisdiction*.

**Non-Taxable Items**

Pure service charges are not taxable in most states. If the service is performed in conjunction with maintenance or repair, the labor portion should be separately stated on the invoice. In addition, items purchased for the purpose of resale (to a dealer for instance) are non-taxable. For this type of purchase, the purchaser should provide the vendor with a resale certificate.

### h. Summary Responsibilities

1. **Manager Responsibilities**
   a. Identify cardholders. Determine the necessity and purpose of each card.
   b. Determine account distribution and credit limits and other card usage criteria.
   c. Ensure that cards issued under their authority are properly utilized.
   d. Review monthly cardholder statement for appropriateness of charges and sign the statement to indicate approval. Forward the approved statement along with all associated receipts to the Account Payable Department for processing.
   e. Gather any cards needing to be canceled for any reason (i.e. cardholder transferring to another area where purchasing supplies or services will not be the cardholder's responsibility or upon termination). Cut the card in half and forward

8

to the Manager, Purchasing & Corporate Travel.

2. **Cardholders Responsibilities**

    a. Complete a Cardholder Agreement in order to obtain a card, obtain Manager's approval and forward Agreement to the Manager, Purchasing & Corporate Travel.

    b. Use the Card only for purchases of items in accordance with company policies set forth in this manual, the Cardholder Agreement and any card usage criteria and restrictions communicated by your manager.

    c. Maintain Card security to prevent unauthorized charges against the account.

    d. Obtain a receipt at the point of purchase and verify it for accuracy. Receipts must contain the following information:

        i. Vendor name
        ii. Item description
        iii. Quantity purchased
        iv. Total price
        v. Sales tax paid

    e. Retain receipts and Visa charge slips.

    f. Record the purpose/event associated with the purchase on the receipt.

    g. Code each transaction with GL code, department, project code and event code no later than the 10th of each month by clicking on the following link payment2.works.com.

    h. Review the monthly statement for validity of transactions. If there is a dispute, contact the vendor to try to resolve the dispute.

    i. Scan your statement with receipts and forward to your supervisor via email for approval and they will forward to Accounts Payable.

    j. Notify the Manager, Purchasing & Corporate Travel of name, telephone, or address changes via email at purchasing@habitat.org.

    k. Return Card and all receipts for unbilled transactions to Cardholder Manager in the event of a change of assignment, department, location or termination of employment.

**If you have any questions, please contact the Manager, Purchasing & Corporate Travel at purchasing@habitat.org or 404-733-3082**

State Court of Fulton County
**E-FILED**
18EV005371
11/6/2018 3:29 PM
LeNora Ponzo, Clerk
Civil Division

# EXHIBIT B

Alston & Bird LLP

| | Policy Family **TRAVEL** |
|---|---|
| **Habitat for Humanity®** | Policy Name **HFHI Travel & Business Expense Policy** |
| **Issuing Department** Finance | **Approved By** Ed Quibell |
| **Effective Date** April 16 2012 | **Release Date** April 16 2012 |
| **Scope** This policy applies to all HFHI Corporate and Area Offices | |

## 1. Purpose

This travel and business expense policy provides Habitat employees traveling on Habitat business with cost effective guidelines to purchase and process travel, in order to control Habitat for Humanity International's (HFHI) overall travel expenses while maintaining traveler safety and productivity. It also specifies the types of Business expenses that are reimbursable (SECTION B)

The Policy:
a. Defines HFHI's global policy and procedures for travel and business expenses in a single document;
b. Outlines the types of expenditure that are and are not reimbursable by HFHI;
c. Furnishes guidelines to those who authorize, incur, and approve travel and business reimbursable expenses;
d. Furnishes guidelines and definitions to assist in fulfilling the substantiation and documentation requirements of HFHI and relevant governmental agencies;
e. Establishes a policy so travel data is easily obtainable to aid in negotiations with preferred suppliers and reduce travel expenses;
f. Empowers managers with the authority to manage the travel and business expenses of their staff members.

## 2. Background

HFHI personnel should always be mindful that HFHI funds are made available through the generous donations of individuals and corporations and the grants of governmental agencies. This policy requires all staff members to ensure good stewardship over every dollar spent in conducting HFHI business.

## 3. Related Reference(s)

a. HFHI Delegation of Authority Policy
b. Delta SkyMiles – MyHabitat
c. Travel and Business Advances Policy- MyHabitat
d. HFHI Employee Handbook
e. Global Assignee Handbook
f. HFHI Personal Device Policy
g. Personal Cell Phone Allowance Policy

*Page 1 of 12*

4. **Definitions/Terminology Clarification**

   a. HFHI Approving Managers - the Manager responsible for reviewing a particular expense and approving it for payment.  The Approving Manager is responsible for thoroughly reviewing all expense reports for correctness, completeness, proper coding and compliance with policy.  The Approving Manager is also responsible for ensuring any exceptions to the policy are documented completely and clearly enough to be understood by the HFHI Corporate Controller for purposes of obtaining approval.

   b. US Based Employee – HFHI employee whose work duty station is within the United States

   c. Global Assignee – HFHI employee working outside of his/her home country on a global assignment

   d. Local Staff – an HFH employee hired in the local area and who did not require relocation to assume job duties.

5. **Policy**

   ## SECTION A – TRAVEL EXPENSES

   This entire section applies to US Based employees.  For Area Office (AO) employees, both Global Assignees and Local Staff, the section applies unless;
   (i)      This policy itself has noted an exception. For instance where a provision like reimbursable tipping for meals cites differences for U.S. vs International.
   (ii)     Where local laws or requirements state differently; for instance, in Slovakia where the law requires local staff to receive per Diem.

   a. **Booking Travel**

      For US-based employees, all air, rail, hotel, and car rental reservations must be made through the designated travel agency unless HFHI is not paying for the expense.   A travel profile must be created and kept current with the designated agency prior to making a reservation.  For Area Office employees, only air travel must be made through a designated travel agency.  The AO may establish procedures for other travel expenses to ensure safe and economical travel.

      (1) **Specified Carriers and Routing:**  Carrier selection shall be based on cost.  HFHI's policy requires the travel agency to determine the best routing, flight, and carrier with the lowest logical fare within a certain time window.  The staff member is required to accept the most direct and economical means of travel.  For flights with segments of greater than 7 hours, staff members may select carriers that will provide them additional services and HFHI will cover up to $100 of the additional costs. (See sec 5a (5) below for Upgrade using SkyMiles.)

(2) **Advance Reservations:**  Advance reservations and ticket purchase usually result in lower fares.  Air travel arrangements should be made far enough in advance (at least 2 weeks, 4 weeks recommended) to take advantage of discounted airline fares.

(3) **Changes/Emergencies/After Hours/Weekend Bookings:**  All itinerary changes (en route or otherwise), emergency travel situations, or after-hours bookings should be handled by calling the designated travel agency.  Prior to making any changes, the cost to HFHI must be considered.

(4) **Payment Method:**  HFHI employees are expected to pay for all travel expenses and seek reimbursement through the Employee Expense Reimbursement System.  In order to ensure employees are not significantly inconvenienced, air travel can be reimbursed before the trip is taken and travel advances are available (must submit itinerary – see section 5d below).

(5) **Delta Sky Miles for U.S. employees' use:**  Through the generosity of Delta and its SkyMiles members, SkyMiles are donated to a Skywish Charities account for HFHI.  Please reference My.Habitat's section on Travel/Delta SkyMiles to determine whether the program is active and other specifics.  Employees booking flights using HFHI SkyMiles are, in certain cases, eligible for a SkyMiles upgrade to Business Class.  Requirements are as follows:
    (a) Employees who travel twice or more in a 60 - day period and three or more segments that are a minimum of 12 hours flying time (in the air, not a layover time). If a trip has a break for one day or more, it is considered two trips, not one. The upgrade must use less than 250,000 incremental miles over coach class.
    (b) The first (round-trip) flight would be coach; subsequent 12+ hour flight(s) within 60 days would be eligible for a business class upgrade.

(6) **Delta Sky Miles for non U.S. employee's use:**  Separate Skywish Charity accounts are also in place for use by LAC and EMEA travelers.  For details on program availability and booking details contact the International Finance Director for that AO.

## b.  Travel Arrangements

(1) Employees are responsible for accepting the lowest cost practical travel offered by the designated agency.  If the lowest cost is not practical, for instance due to length of travel or number of layovers, the reason for the exception must be noted and approved by the Approving Manager.

(2) HFHI will pay for staff members to travel by rail in the class that has the lowest cost and is safe and to fly economy class only. (Exceptions see item 5 sec  a (1) Specified Carrier routing and sec a (5) Delta Sky Miles)

(3) Staff members will be responsible for all incremental expenses incurred because of personal and/or companion travel arrangements.

(4) In order to be reimbursed for air fare, staff members must submit their itinerary which clearly states all details, including but not limited to the travelers, dates of travel, and proof of payment.  Reimbursement can be processed prior to date of travel if the designated agency was used.

(5) Credit card foreign transaction fees, ATM fees and other business costs in association with foreign exchange while traveling internationally are reimbursable.

c.  **Travel for non-employees**

Travel for non-employees should not be paid for by HFHI unless required by contract.  If a unique situation requires payment of travel for a non-employee this must be adequately documented and approved by the individual with the appropriate authority and the expenses adequately supported before payment.  One of the following options should be followed.

(1) If employee charges to their travel card, submit expenses through the expense reimbursement system.

(2) If non-employee pays for their travel, submit a check request for reimbursement through Accounts Payable.

(3) If HFHI is not responsible for the expenses, submit a copy of all receipts which were paid by HFHI to Accounts Receivable for billing to the responsible party.

d.  **Travel Advances**

Staff members may obtain a travel advance from Accounts Payable by submitting a properly approved travel advance request at least five business days prior to the date needed.  The dates of the staff member's travel, the destination, and business purpose for the trip must be noted on the travel advance request. Travel Advances must be reconciled within 10 business days of returning from a trip.

e.  **Lodging**

(1) HFHI staff members should stay at the most economical, safe and clean lodging available.  For travel within HFH NOs, this information can be obtained by consulting with the NOs.  Each AO may compile this data per country for use by staff whenever they travel to these specific locations.

(2) Staff members are not required to share a room.

(3) HFHI will only reimburse for a standard room.

(4) All lodging charges are the responsibility of each individual staff member and should be settled upon departure.  Cancellation of reservations must be communicated to the hotel via the designated travel agency or through the established AO procedure prior to the cancellation deadline and the cancellation number recorded to avoid "no show" charges.

(5) Staff members are not to make non-refundable lodging reservations in order to avoid cancellation costs.   This does not apply when purchasing airfares.

(6) Laundry and dry cleaning expenses are reimbursable for trips exceeding five (5) days or for trips that are unexpectedly extended. Laundry and dry cleaning expenses will only be reimbursed for clothing required to complete the trip.

(7) Hotel internet charges for HFHI purposes are a reimbursable expense.

**f.  Car Rental & HFHI Fleet**

(1) Staff members may rent a car for business-related transportation at their destination when it is less expensive or safer than other transportation modes such as airport shuttles or taxis.

(2) Staff members must make all rental car reservations and changes through the designated travel agency or through the established AO procedure.

(3) HFHI's vehicle fleet insurance coverage provides insurance coverage for staff members renting a vehicle; therefore, insurance coverage through the rental car company should be declined within the US. When traveling outside of the US, insurance should be purchased when renting a car.

(4) A staff member traveling alone or with one additional staff member should reserve a compact size or smaller rental car.  A mid/intermediate size car is reimbursable when three or more staff members are traveling together.  Special situations (e.g., transporting large numbers of people or equipment) may necessitate renting larger vehicles and should be explained in the reimbursement submission.

(5) In the event of a rental car accident, immediately advise the rental company, file an accident report with the local police department and contact HFHI's Legal Department and supervisor (or any level of management in the reporting line) as soon as possible.

(6) HFHI will reimburse for normal expenses incurred while operating a rental vehicle, e.g., gas, highway tolls and parking lot fees.

(7) In order to receive reimbursement for car rentals, staff members are required to submit the auto rental agreement or the transaction record received upon vehicle return and proof of payment.

(8) Fleet Cars: HFHI maintains a fleet of automobiles for business use. The use of fleet vehicles is determined by the policy at each location. An HR form must be completed for use of fleet vehicles.

**g. Use of Personal Automobile**

(1) Staff members may only use their personal automobiles for business travel if they have a current Driver Authorization Request Form (available on MyHabitat under Facilities) on file with HR.

(2) In the US, the per-mile reimbursement rate is based on IRS guidance and will be applied by the expense reimbursement system. For Area Office employees, the reimbursement rate will be determined in accordance with local laws and guidelines. The distance between home and work place cannot be included in the computation of mileage to be reimbursed. Mileage should be the shorter of the distance from the HFHI office to your destination or your home to the destination.

(3) Staff in remote offices will be reimbursed for mileage if it is greater than 35 miles/56 kilometers each way, for any trips to their nearest HFHI office.

(4) The per-mile reimbursement rate covers all operating expenses including fuel, oil, maintenance, insurance and wear when using a personal vehicle. These expenses are not reimbursable when mileage is claimed.

(5) HFHI will reimburse staff members for other normal expenses incurred while operating a vehicle, e.g., highway tolls and parking lot fees.

(6) Staff members must consider if it is more economical to rent a car for trips involving a large number of miles.

**h. Meal Expenses**

(1) HFHI does not recommend the use of per diem allowances unless expressly required by the local laws where the AO is located.

(2) HFHI's standard daily meal expense reimbursement is $30 and may include meals, groceries and bottled water. There is no requirement regarding the amount required for individual meals. The Approving Manager can approve amounts appropriate for the trip destination and circumstances of up to $45. Explanation of any non-standard reimbursement amounts must be included in the trip documentation.

(3) Total meal expenses for the duration of the trip should not exceed the sum of the standard daily meal reimbursement amounts for each day of the trip.

(4) Meal expenses for day trips without an overnight stay and greater than10 hours are reimbursable.

(5) Tips are reimbursable and should reflect local tipping practices.  In the US, the standard tip amount is 15% with a maximum of 20% that is acceptable.  For all other countries, the standard tip is 5-10% and a maximum of 15% can be accepted.

**i.   Telephone Usage**

(1)  Expenses for business phone calls and internet access while traveling are reimbursable.

(2)  Staff members are permitted reimbursement for one personal phone call per day while traveling. The cost of the call must be documented. The duration of the personal call should not be excessive.

(3)  Telephone calls from hotel rooms can be subject to expensive surcharges and therefore, should be avoided.   It is the staff member's responsibility to identify and use the most cost effective means of communicating from their location.

**j.   Expense Reporting Requirements**

(1) The Approving Manager has the responsibility to ensure reimbursements are correct, fair and an appropriate use of Habitat funds.  Accounts Payable and Internal Audit will audit selected expense reports and the reimbursement process on a regular basis.

(2) Receipts are required to support most travel expenses depending on the staff member employer's home country tax.  HFHI requires a receipt for purchase of more than US $25.00. An AO may determine a more stringent requirement for receipts requiring reimbursement. Receipts presented for reimbursement must detail the items purchased.  A credit card charge slip or statement by itself is not acceptable as it is only proof of payment.

(3) Staff members must include all expenses associated with a single business trip on the same expense report.  However, multiple business trips may be included on one expense report.

(4) Expense reports should be submitted and authorized by an approving manager within ten (10) days of returning from a business trip. Business expenses not reported within sixty (60) days from the date incurred will require a reimbursement exception by HFHI's Controller. Tuition reimbursement is an exception to this requirement since it is approved by HR only after successful completion of the course.

(5) Foreign currency expenses may be converted to the required currency by either using the specific transaction rate from a receipt or OANDA.com.  Staff members required to use an online expense reimbursement system may enter the foreign currency expenses into system which has the capability of converting foreign currency to USD.

(6) When a HFHI staff member has paid the meal expenses for a group, the following information is required in addition to the detailed receipt:
    (a) Business purpose for the meal
    (b) Names, titles, and business affiliations of all participants
    (c) Description of expenditure
    (d) The highest-ranking member of the group is required to pay for the group.

### k.  Non-Reimbursable Expenses

Non-reimbursable expenses include (but are not limited to):
(1) Alcoholic beverages (With rare exceptions related to donor relations. Such exceptions require Controller approval via email)
(2) Childcare expenses
(3) Travel insurance
(4) Telephone and internet charges incurred from airplane
(5) Pet boarding or grooming
(6) Penalties or fines for traffic infractions, such as parking or moving violations
(7) Fees for membership in a frequent or preferred rental car, airline or hotel program
(8) Rental car insurance fees offered by rental car companies in the US
(9) Hotel In-room movies
(10) Hotel "no show" charges
(11) Hotel charges related to "non-refundable" room cancellations.
(12) Executive or concierge-level or suite-type rooms
(13) Membership dues for airline/airport clubs
(14) Expenses for using cellular phone or GPS provided by rental car agencies

## SECTION B – BUSINESS REIMBURSABLE EXPENSE

### a.  Employee Recognition

Employee recognition expenses which are included in the department budget can be approved by the department manager, subject to the limits in the Delegation of Authority policy.  Cash and/or cash equivalents (gift cards etc.) recognition expense is not allowable.  Exceptions to this section require approval from the SVP of Human Resources.

### b.  Beverage and Meal Expense

Non-business travel beverage and meal expenses are not reimbursable

c. **Tuition Reimbursement and Training**

    (1) Expense reimbursement for educational expenses is covered under Tuition Reimbursement in the Employee Benefits section of the US Employee and Global Assignee Handbooks.

    (2) Professional training is a reimbursable expense, but must be approved by Learning and Organizational Development. (See section HR on MyHabitat)

    (3) Transportation, food and lodging expenses associated with training are reimbursable within the constraints of the employee's department's budget.

d. **Memberships**

    (1) Fees for memberships to certain business/professional organizations are eligible for reimbursement.

    (2) Membership must be job-related and have objectives beneficial to HFHI.

    (3) Initial memberships and renewal fees require Department Head approval.

    (4) Club memberships are not reimbursable. Examples of non-reimbursable memberships include fees, dues or required purchases associated with social, athletic, luncheon, travel, and country clubs.

e. **Donations**

    (1) Donations made by staff members to HFHI, including affiliates, or other not-for-profit organizations are not reimbursable.

    (2) Purchase of raffle tickets on behalf of a staff member and/or HFHI is not reimbursable.

f. **Gifts/Flowers**

    (1) Flowers are reimbursable in the event of the death of a staff member or staff member's immediate family member as defined in the US Employee and Global Assignee Handbooks. Prior documented authorization by the Approving Manager is required for reimbursement.

    (2) Prior documented authorization by the Approving Manager is required under circumstances where a gift or flowers to a donor, affiliate or partner can be considered an appropriate business activity for reimbursement by HFHI.

**g. Holiday Related Expense**

(1) The Facilities Team (or equivalent at Area Offices/other HFHI Offices) will decorate common office space for holidays as appropriate.

(2) Other office decorations are not reimbursable.

(3) Senior leaders with their directors/managers should determine for each division how best to celebrate holidays within each functional group. This decision should be based on available budget and being appropriate stewards of organizational resources.

(4) If sending cards to donors or vendors, managers should consider using HFHI branded items, like a calendar.

**h. Books and Subscriptions**

(1) Books must be job-related in order to be considered a business expense. Those fitting this criterion may be reimbursable at the discretion of the Approving Manager.

(2) Once purchased, books must be labeled immediately upon receipt as HFHI property.

(3) These books must remain with HFHI even after the staff member's employment is terminated.

(4) Subscriptions to publications must be job-related in order to be considered a business expense. Those fitting this criterion may be reimbursable by HFHI, at the discretion of the Approving Manager.

**i. Office Supplies**

Office supplies should be purchased through HFHI designated suppliers with whom each HFHI entity (Headquarters and Area Offices) has negotiated special pricing (see MyHabitat for instructions.)

**j. Cell Phones and Data Phones, and Wireless Data Cards**

Generally, employees in positions which have been approved as needing a cell phone / data device for conducting HFHI business will use their own personal device and will be paid a monthly allowance to offset a portion of its cost. For further specifics on dollar amounts, approvals, and exceptions see "HFHI Personal Device Policy" and "Personal Cell Phone Allowance Policy".

**k. Standard Remote Office Set-up**

(1) The Division Vice President and Vice President of Human Resources must approve all requests for remote offices

(2) HFHI will reimburse approved remote office holders for basic landline telephone service, voicemail and basic data service (DSL or Cable Modem) for access to the Internet.

(3) It is the remote office holder's responsibility to pay for any special features they select for these services.

(4) Remote office holders must designate the HFHI negotiated service carrier as their long distance provider.  Identification of the long distance provider can be found on the Information Services pages of MyHabitat

(5) Long distance charges are centrally billed and administered.

(6) No other furniture, equipment, office decoration or service will be furnished or funded by HFHI.

**l.    Personal Calls**

HFHI phones are to be used primarily for business purposes.

**m.    Hardware and Software**

For reimbursement of computer software and hardware, please review the HFHI Delegation of Authority Policy for details.

**6. Other Considerations:**

**a.**   Failure to comply with this policy may result in disciplinary action up to and including termination.

**b.**   Any exceptions to this policy must be approved by HFHI's Corporate Controller (see Attachment I)

**7. Change History**

| Date | Modification | Approved by |
|---|---|---|
| April 16 2012 | New combined policy supersedes previous Travel and Expense Policies.  Policy now incorporates the Delta SkyMiles programs and eliminates use of corp. card program. | SLT |
| September 23, 2013 | Deletion of all reference to the Delta UATP program which has been eliminated | Director, Internal Controls |
| March 2015 | Receipts for expenses are required for purchases of $25 and above, employees are not make non-refundable lodging reservations, Delta Skymiles for non U.S. employee use and policy requirements related to HFHI Personal Device Policy and Personal Cell Phone Allowance Policy. | HFHI CFO, HFHI Controller and Sr. Director International Finance |

## Attachment I: Policy Exception Approval Form

| | |
|---|---|
| **Date:** | |

| | |
|---|---|
| **Employee's Name :** | **Job Title:** |
| **Department(s) (name and #):** | **Unit/Division:** |
| **Policy provision (s) affected:** | |
| **Exception sought and reasons why:** | |
| **Employee Signature:** | |

**Forwarded by Approving manager**

| Name (Print or Type): | Title | Department: |
|---|---|---|
| Signature: | Full Phone Number: | Date: |

**Approved by HFHI Controller:**

| Name (Print or Type): | | Department: |
|---|---|---|
| Signature: | Full Phone Number: | Date: |

*This form must be included in the Expense Reimbursement System as part of the attached expense documentation.*